## L. Frank Hughes, et al., v. Mary V. McCasland, et al.

1. MECHANIC'S LIEN—*when attaches.* A mechanic's lien attaches from the time the contract is made.

2. MECHANIC'S LIEN—*upon what attaches.* A mechanic's lien attaches to the interests of those who make the contract and to the interests of all those who authorized or knowingly permitted such contract to be made.

3. MECHANIC'S LIEN—*when estoppel to assert, arises.* A mechanic's lien claimant is estopped to assert priority as against the holder of a mortgage debt who permitted the debt to be created only after receiving a statement from such lien claimant which statement did not disclose the lien sought to be enforced.

Mechanic's lien proceeding. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the February term, 1905. Reversed and remanded. Opinion filed September 7, 1905.

N. C. LYRLA and D. E. KEEFE, and McHALE & SUMNER, for appellants.

E. W. EGGMANN, for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a proceeding in the City Court of East St. Louis, commenced by L. Frank Hughes, one of appellants, against appellees to establish a mechanic's lien upon the real estate involved herein. After the filing of the petition by Hughes, the Central Plumbing, Heating and Boiler Company, the other appellant, filed its intervening petition, claiming a lien on said premises for labor and material furnished by it.

Guy McCasland was a minor engaged in the business of buying, improving and selling real estate, and in his dealings, on account of his not being of age, had property deeded to and by his mother. To that extent, at least, he carried on his own business in his mother's name. C. O. McCasland, whose name appears in the record, was a half-brother of Guy McCasland and a step-son of Mary V. McCasland.

On March 24, 1903, C. O. McCasland executed a bond for deed of the premises in question to Guy McCasland, and thereafter Guy entered into a contract with appellant Hughes for the erection of a dwelling house thereon. As the dwelling was nearing completion, Guy procured his brother to execute the deed called for in the bond, taking the deed in his mother's name, and thereafter entered into a contract of sale of the premises to Otelia Vollman for $2,500. The deed was executed October 1st, and the contract with Vollman October the 8th. Between the eighth and the fourteenth, with the knowledge of Guy, Vollman employed Hughes, who had not yet completed the house, to make some additions to it, not called for in the contract with Guy, and also with Guy's knowledge, employed the Central Plumbing, Heating and Boiler Company to do some plumbing in connection with this addition. Work was actually begun on both of these jobs before the sixteenth. Mary V. McCasland, the mother, had in equity no interest of any kind in the premises until some time after the sale to Vollman. Upon this question Guy testified: " It was my property when I sold it to her. My mother did not own the property I sold to Mrs. Vollman, yet I had the deed taken to her." From the 1st to the 14th, no one had any equitable interest in this property but Guy and Mrs. Vollman, except such interest as the lienors had. Whatever right Mary V. McCasland ever had in the property she acquired from Guy, and that right was not consummated until the 14th, and as to innocent third parties without notice, not until the recording of her deed on the 16th.

On the 14th an arrangement was consummated between Guy, Horace J. Eggman, Mary V. McCasland (Guy's mother), and Vollman, whereby Eggman loaned $1,500 on the premises; Vollman retaining the premises on the basis of her contract with Guy, she assuming payment of the mortgage and giving Guy's mother a note for $475, having already paid Guy $100, and deeded him a lot, in his mother's name, of the value of $425. Guy's mother took

the title conveyed by the deed over to herself, instead of holding it for Guy as she had up to that time done, executed the mortgage to Eggman, and executed a bond for deed to the premises in question here, to Vollman, and paid Guy $375. The deeds to Guy's mother and the mortgage to Eggman were not recorded until the 16th.

When Eggman loaned the money he knew that the premises were being improved, and that Hughes and his subcontractors had not been paid in full, and to protect himself he held back the proceeds of the loan until a settlement could be made with them. On the 22nd, Hughes made a statement under oath, of the amount due him and his sub-contractors, and upon this statement Eggman paid out the proceeds of the loan.

On November 10th, Hughes completed the additions he had contracted for with Vollman, and there was due him therefor $195, which had not been paid. And on November 5th, the Central Plumbing, Heating and Boiler Company completed its work and there was due it therefor $148, and it had not been paid. The trial court limited appellants' decree to the interest of Otelia Vollman in the premises, and made their liens subject to Eggman's mortgage, and subject to the payment of $475, note given by Vollman to Mary V. McCasland, in the deed above noted. This was error.

A mechanic's lien attaches from the time the contract is made. It attaches to the interest of those who make the contract, and to the interest of all those who authorize or knowingly permit such contract to be made. At the time these liens attached, no one had any kind of interest, in equity, in these premises but Guy McCasland and Otelia Vollman, and Vollman made the contract with Guy's knowledge and consent. Both Eggman and Mary V. McCasland took subject to these liens, and hold subject to them, except that Hughes is estopped by his subsequent acts from asserting his priority over Eggman's mortgage. After Hughes' lien had attached and while Eggman was holding the proceeds of the loan for the purpose of making himself secure against any and all liens that might have attached

to these premises for improvements, Hughes made a statement in detail as to his liens, upon which Eggman acted and paid out the money. It is claimed by counsel that Hughes only understood that he was expected to make out his statement with reference to work done under the first contract; however this may be, we think, notwithstanding the conflict, that the weight of evidence and the reasonable view to take of it is, that Eggman understood and was warranted in understanding before he paid out the money that Hughes had no other liens against the property than those disclosed.

Appellant, the Central Plumbing, Heating and Boiler Company, is entitled to a lien upon the entire premises, prior and superior to Eggman's mortgage and to any claim or interest of Mary V. McCasland. Appellant Hughes is entitled to a lien upon the entire premises, prior and superior to any claim or interest of Mary V. McCasland, but subject to the mortgage claim of Eggman.

The decree of the City Court of East St. Louis is reversed and the cause remanded with directions to enter a decree in that court in accordance with this opinion.

*Reversed and remanded.*